UNITED STATES DISTRICT COURT for the
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JACK ARGILA, in his fiduciary capacity as a Trustee for the POINTERS, CLEANERS & CAULKERS WELFARE, PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT APPRENTICE TRAINING FUND, the LABOR MANAGEMENT FUND, and the PROMOTION FUND; and as President of the BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U., AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND TROWEL TRADES INTERNAITIONAL PENSION FUND and the INTERNATIONAL MASONRY INSTITUTE,<br><br>Plaintiffs,<br><br>-against-<br><br>FIDELIS CONTRACTING, INC., LAKHVINDER SINGH, and TEJINDER GUJRAL,<br><br>Defendants. | : | **COMPLAINT**<br><br>20-CV-3378 |

Plaintiffs, by their attorneys, HOLM & O'HARA LLP, as and for their Complaint against the Defendants, allege the following:

## NATURE OF ACTION

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq., the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., the New York Lien Law, N.Y. Lien L. § 70, et seq. and common law.

## JURISDICTION AND VENUE

2. Jurisdiction over the causes of action alleged herein is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337; by 29 U.S.C. §§ 185(c), 1109(a), 1132(a)(2), 1132(a)(3), 1132(d), 1132(e)(1) and 1132(f).

3. Venue is properly placed in the Eastern District of New York under 29 U.S.C. §§ 185(a) and 1132(e)(2) in that the subject plans are administered and maintain their principal office in the County of Queens, New York, and Bricklayer and Allied Craftworkers Local Union No. 1 has its principal place of business in the County of Queens, New York.

## PARTIES

4. Plaintiffs, Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds and Bricklayers Joint Apprentice Training Funds ("PCC Funds") are jointly trusteed "multiemployer plans" established pursuant to a collective bargaining agreement and by trust indentures. The PCC Funds are employee benefit plans within the meaning of 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and multiemployer plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The PCC Funds are the administrator of all of the ERISA Plans and the Non-ERISA Plans (the "Plans"). Under the collective bargaining agreements, signatory employers, including the defendant company, are required to remit the required contributions, as well as summaries of their payroll records. The PCC Funds are authorized to maintain suit as an independent legal entity under 29 U.S.C. § 1132(d)(l). The PCC Funds are administered and maintain an office located at 66-05 Woodhaven Boulevard, Rego Park, New York 11374.

5. In addition, the PCC Funds collect assessments from certain employees covered by the collective bargaining agreements who authorize their employers to deduct from their wages union dues and assessments due to the union ("Union Amounts").

6. The PCC Funds also collect, in accordance with the collective bargaining agreements, contributions due to the following non-ERISA plans: the Labor Management Relations Fund and the Promotion Fund ("non-ERISA Plans"). Together, the Union Amounts and the amounts owed to the non-ERISA Plans are referred to as the "Non-ERISA contributions." The

contributions to the ERISA Plans and the non-ERISA contributions are collectively referred to as "Contributions."

7. Plaintiff, Bricklayers & Trowel Trades International Pension Fund ("IPF") by its employer and employee representatives and Trustees, Timothy Driscoll, Robert Arnold, Carlos Aquin, Jeremiah Sullivan, Jr., Gerard Scarano, Gerald O'Malley, Henry Kramer, Gregory Hess, Matthew Aquiline, Robert Hoover, William McConnell, John Trendell and Anthony Marra (hereinafter the "International IPF Trustees") is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IPF is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and multiemployer plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IPF, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the participants and beneficiaries of the IPF. The IPF is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

8. The IPF is also authorized to effect collections on behalf of the plaintiff International Masonry Institute ("IMI") pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

9. Plaintiff, IMI, by its employer and employee representatives and Trustees, Jim Allen, Matthew Aquiline, Carlos Aquin, Jack Argila, Robert Arnold. John Capo, Ted Champ, Tommy Conner, Tim Driscoll, Gregory Hess, Robert Hoover, Brian Jennewein, David Jackson, Fred Kinateder, Jr., Ken Kudela, Chuck Kukawka, Dan Kwiatkowski, Richard Lauber, Jr., William McConnell, Tim Miller, Jim O'Connor, Dennis Pagliotti, Charles Raso, Michael Schmerbeck,

Jeremiah Sullivan, Jr., and John Trendell (hereinafter the "International IMI Trustees"), is a multi-employer, labor-management trust fund, organized and operated pursuant to various collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). The IMI is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and multiemployer plan within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Trustees of the IMI, in their respective capacities as fiduciaries, bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI. The IMI is administered and maintained at its office located at 620 F Street, NW, 9th Floor, Washington, DC 20004.

10. Plaintiff Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("LOCAL 1") is an association under the laws of the State of New York and a labor organization within the meaning of 29 U.S.C. § 185 that represents employees in an industry affecting commerce as defined in 29 U.S.C. § 142(1) and 29 U.S.C. § 1002(12). LOCAL 1's membership includes the pointing, cleaning and caulking trade and the bricklaying trade. LOCAL 1 maintains offices located at 4 Court Square, Long Island City, New York 11101.

11. Plaintiff Jack Argila is a Trustee of the PCC Funds and President of LOCAL 1 and this lawsuit is brought in his capacity and in the Board of Trustees of the IPF FUND's and IMI FUND's (collectively "INTERNATIONAL FUNDS") capacity as fiduciaries of their respective funds within the meaning of ERISA 29 U.S.C. §1002 (21).

12. Defendant, Fidelis Contracting, Inc. ("FIDELIS"), was, at all times relevant to this action, a domestic corporation organized under, and existing by virtue of, the laws of the State of New York, with its offices and principal places of business located at 300 Northern Boulevard, Suite 201, Great Neck, New York 11021.

13. Upon information and belief, FIDELIS was an "employer," within the

meaning of 29 U.S.C. §§ 1002(5) and 1145 at all times relevant to this action and is engaged in the construction business, which qualifies FIDELIS as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

14. Upon information and belief, FIDELIS was a "trustee," with respect to monies received in connection with contracts for improvement of real property, within the meaning of Article 3-A of the New York Lien Law, N.Y. Lien L. §§ 70(1), 71.

15. Upon information and belief, defendant, Lakhvinder Singh ("SINGH"), a natural person, has been, at all material times relevant to this action, an officer of FIDELIS and the last known address for SINGH is 300 Northern Boulevard, Suite 201, Great Neck, New York 11021.

16. On behalf of FIDELIS, SINGH executed the Project Labor Agreement ("PLA") Letter of Assent to perform work as a subcontractor of BG National Plumbing & Heating, Inc. on the New York City School Construction Authority ("SCA") P.S. 31Q project.

17. Upon information and belief, SINGH was an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145 at all times relevant to this action and is engaged in the construction business which qualifies SINGH as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

18. Upon information and belief, defendant SINGH is a "fiduciary," with respect to the FUNDS, within the meaning of ERISA, 29 U.S.C. § 1002(21)(A) and Article 3-A of New York Lien Law.

19. Upon information and belief, SINGH exercised authority or control with respect to the management or disposition of plan assets that should have been held in trust by FIDELIS and remitted to the FUNDS.

20. Upon information and belief, SINGH exercised unauthorized dominion or control with respect to the management or disposition of dues and assessments that should have been held in trust by FIDELIS and remitted to LOCAL 1, in a manner that interfered with LOCAL 1's legal title or superior right of possession of said dues and assessments.

21. Upon information and belief, defendant, Tejinder Gujral ("GUJRAL"), a natural person, has been, at all material times relevant to this action, an officer of FIDELIS and the last known address for GUJRAL is 300 Northern Boulevard, Suite 201, Great Neck, New York 11021.

22. On behalf of FIDELIS, GUJRAL executed the New York Corrections Department ("DOC") PLA Letter of Assent to perform work as a subcontractor of Sea Breeze G.C., Inc. at Rikers Island.

23. On behalf of FIDELIS, GUJRAL signed certified payroll reports.

24. Upon information and belief, GUJRAL was an "employer," within the meaning of 29 U.S.C. §§ 1002(5) and 1145 at all times relevant to this action and is engaged in the construction business which qualifies GUJRAL as an "employer engaged in an industry affecting commerce," within the meaning of 29 U.S.C. § 185.

25. Upon information and belief, defendant GUJRAL is a "fiduciary," with respect to the FUNDS, within the meaning of ERISA, 29 U.S.C. § 1002(21)(A) and Article 3-A of New York Lien Law.

26. Upon information and belief, GUJRAL exercised authority or control with respect to the management or disposition of plan assets that should have been held in trust by FIDELIS and remitted to the FUNDS.

27. Upon information and belief, GUJRAL exercised unauthorized dominion

or control with respect to the management or disposition of dues and assessments that should have been held in trust by FIDELIS and remitted to LOCAL 1, in a manner that interfered with LOCAL 1's legal title or superior right of possession of said dues and assessments.

## PRELIMINARY STATEMENT

28. SINGH, on behalf of himself and FIDELIS, executed the SCA's PLA Letter of Assent.

29. The SCA's PLA Letter of Assent states that FIDELIS "agrees to be bound by the legally established collective bargaining agreements and local agreements as set forth in the [PLA] and [Letter of Assent]," to the extent of work performed under the PLA.

30. The PLA incorporates the collective bargaining agreement between LOCAL 1 and the Building Restoration Contractors Association, Inc. ("BRCA") for the period July 1, 2015 through June 30, 2019 (the "CBA") for pointing cleaning and caulking work.

31. The PLA and Letter of Assent therefore bind FIDELIS to the CBA.

32. At all times relevant to the allegations of this Complaint, FIDELIS, SINGH and GUJRAL (collectively "EMPLOYER"), through the PLAs, have been bound by the CBA, governing the rates of pay and the working conditions of individuals employed by defendant FIDELIS within the jurisdiction of LOCAL 1.

33. EMPLOYER employed individuals to perform work that is covered under the PLA and the CBA.

34. The CBA, including, but not limited to Articles I, IV, V, VI and VII, defines: (a) the employees covered by the CBA; and (b) the work covered by the CBA.

35. Articles XIII, XIV, Section 1, XV, Section 1, and XVI, Section 1 of the CBA require EMPLOYER to pay wages and wage supplements in the form of fringe benefit

contributions to the FUNDS for all employees employed by EMPLOYER and covered by the CBA from the first day of employment forward at the rates specified in Articles XIII and XVIII of said CBA.

36. Article XIV of the CBA requires EMPLOYER to deduct and remit to LOCAL 1 a portion of its employees' wages in the form of dues and various assessments for all employees performing work covered by the CBA at rates specified in said CBA.

37. Article XV, Section 4 of the CBA requires EMPLOYER to submit monthly payroll remittance reports regardless of whether the employer performed work covered by the CBA for the month.

38. Article XV, Section 5 of the CBA requires EMPLOYER to be bound by the written terms of the FUNDS' Trust Agreements.

39. Article XV, Section 7 of the CBA requires EMPLOYER: 1) to turn over all books and records requested by the FUNDS' auditors pursuant to a periodic review and audit designed to ensure that all contributions owed pursuant to the CBA are paid in full; and 2) to pay the costs of the audit if EMPLOYER is found delinquent.

40. Article XV, Section 7(a) of the CBA requires EMPLOYER to turn over any books and records of any affiliate, subsidiary, alter ego, joint venture or other related company of the EMPLOYER doing bargaining unit work within the Union jurisdiction.

41. Article XV, Section 7 of the CBA requires EMPLOYER to retain for a period of six (6) years payroll and related records necessary for a proper audit.

42. In the event EMPLOYER refuses to turn over the books necessary to conduct a proper audit, Article XV, Section 7 paragraph (b) of the CBA permits the Trustees to determine that EMPLOYER's monthly hours subject to contributions for each month of the audit

period are the highest number of hours for any month during the twelve (12) preceding months audited or during the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater.

43. Article XV, Section 7(b) of the CBA gives the FUNDS the right to commence legal proceedings to compel an examination of EMPLOYER's books and records for an audit. Further, in the event the FUNDS commence legal proceedings to compel an audit examination, the FUNDS shall be entitled to recoup all audit costs, legal fees, costs and expenses regardless of whether a delinquency is found.

44. Article XV, Section 7 of the CBA gives the FUNDS the right to seek a court order permanently enjoining EMPLOYER and their agents from failing to submit monthly payroll remittance reports, pay the required contributions, and cooperate in an audit. Further, EMPLOYER agrees not to raise any defense or counterclaim to the FUNDS' application for such order.

45. Article XV, Section 7 of the CBA entitles the FUNDS to simple interest at a rate of not less than ten percent (10%) per annum on all contributions owed by EMPLOYER.

46. Article XV, Section 7 of the CBA provides that the FUNDS are entitled to liquidated damages of twenty percent (20%), interest, costs, and attorneys' fees pursuant to the civil enforcement provisions of ERISA.

47. Since on or about November 1, 2016 to date, EMPLOYER has failed to submit full payment of fringe benefit contributions to the FUNDS, and dues and assessments to LOCAL 1 for employees performing work covered by the CBA.

**<u>Notification to the EMPLOYER</u>**

48. At the direction of the Trustees, the FUNDS' auditor, Kobgo Associates, Inc. ("Kobgo"), attempted to conduct an audit examination of FIDELIS for the period November

1, 2016 through June 30, 2019, but was unable to gain FIDELIS' cooperation in submitting to the audit examination.

49. By email and letter to FIDELIS dated November 13, 2019, H&O, on behalf of the FUNDS, demanded that FIDELIS schedule an appointment for the audit examination of its books and records by November 22, 2019. FIDELIS failed to do so.

50. By email and letter to FIDELIS dated November 25, 2019, H&O, on behalf of the FUNDS, sent FIDELIS a final demand to cooperate in the audit examination of its books and records.

51. FIDELIS scheduled an audit appointment with Kobgo.

52. Kobgo conducted the audit examination of FIDELIS for the period November 1, 2016 through June 30, 2019 and issued an audit report of FIDELIS dated February 19, 2020, which reported a delinquency due to PLAINTIFFS by FIDELIS in an amount not less than $19,642.88 for the SCA's P.S. 130K and P.S. 31Q projects, plus audit costs of $1,720.00 (the "Audit").

53. By letter dated February 25, 2020, the FUNDS provided FIDELIS with a copy of the Audit of FIDELIS and demanded that FIDELIS remit payment of the audit delinquency and audit costs in the total amount of $21,363.00 or submit written audit objections with supporting documentation within ten (10) days of the date of the letter.

54. FIDELIS did not submit any audit objections or payment of the audit delinquency.

55. To date, FIDELIS owes the FUNDS unpaid contributions, dues and assessments in an amount not less than $19,642.88 for the period November 1, 2016 through June 30, 2019. The amount of *contributions* owed to the Funds is not less than $18,371.96 and the

amount of *dues and assessments* owed to Local 1 is not less than $1,270.92.

**<u>Violations of the CBA, ERISA, Common Law, and New York State Lien Law</u>**

56. In violation of the CBA and ERISA, EMPLOYER has failed to remit delinquent contributions to the FUNDS for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96 based upon the Audit.

57. Pursuant to 29 U.S.C. § 1132(g)(2) and the CBA, the FUNDS are entitled to recover from EMPLOYER: (a) all delinquent contributions for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96, and continuing throughout the pendency of this action; (b) interest at the rate of ten percent (10%) per annum on all delinquent contributions (as defined in the CBA); (c) the greater of interest or liquidated damages of twenty percent (20%) on all delinquent contributions; (d) audit costs; (e) reasonable attorney's fees, costs, and expenses; (f) along with such other legal and equitable relief as the Court deems appropriate.

58. In violation of the CBA, EMPLOYER failed to remit dues and assessments to LOCAL 1 for the period November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92.

59. Pursuant to the CBA and New York C.P.L.R. 5001 and 5004, LOCAL 1 is entitled to recover all delinquent dues and assessments, for the period November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92, and continuing throughout the pendency of this action, and prejudgment interest at nine percent (9%) per annum from the date due to the date paid.

**<u>Fiduciary Claims against SINGH and GUJRAL</u>**

60. New York Lien Law, Article 3-A, Section 70 imposes a trust upon all funds dedicated to an improvement of a parcel of real property.

61. New York Lien Law, Article 3-A also imposes a fiduciary duty on SINGH and GUJRAL to distribute the proceeds of the trust in accordance with the priority scheme set forth therein.

62. Article XV, Section 7(e) of the CBA binds, personally, the officers, partners, directors, stockholders and/or employees of FIDELIS who are vested with authority and control over the submission of reports and/or the payments of contributions to the FUNDS, to submit the required reports and to pay the required contributions to the FUNDS.

63. Article XV, Section 7(e) of the CBA states specifically that "[t]he Employer recognizes that once the contributions become due and owing to the Fringe Benefit Funds, the contributions are assets of the Fringe Benefit Funds, and Employer acts as a fiduciary of those fund assets until they are paid over to the Fringe Benefit Funds."

64. Article XV, Section 13 of the CBA provides that "Employers whose contributions are due and owing to the Fringe Benefit Funds are fiduciaries of the Fringe Benefit Funds as to those contributions until the contributions are remitted to the Fringe Benefit Funds."

65. Article XV, Section 5 of the CBA binds EMPLOYER directly to the provisions of the Agreement and Declaration of Trust for each of the FUNDS (Welfare, Pension and Annuity, individually), as though the Employer had actually signed the individual documents, and further binds the Employer to all actions taken by the Trustees of each of the FUNDS pursuant to said Agreements and Declarations of Trust, as amended, and their respective Plans, as amended.

66. The Agreement and Declaration of Trust for each of the FUNDS provides, in relevant part, under Article II, Section 2 that: "The assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers. . . ."

67. The Agreement and Declaration of Trust for each of the FUNDS provides,

in relevant part, under Article III, Section 3 that: "[a]ll contributions required from an Employer shall, after their due date and until their payment over in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary."

68. The IPF Trust Agreement provides, in relevant part, under the Amendment of May 21, 2003 that: "[t]itle to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund."

69. Upon information and belief, SINGH exercised dominion and control respecting the management or disposition of the FUNDS' plan assets (i.e. contributions) by acting as an officer of FIDELIS and executing the SCA's PLA Letter of Assent.

70. Upon information and belief, GUJRAL exercised dominion and control respecting the management or disposition of the FUNDS' plan assets (i.e. contributions) by acting as an officer of FIDELIS, executing the DOC's PLA Letter of Assent, and by signing certified payroll records.

71. Upon information and belief SINGH and/or GUJRAL diverted contributions due the FUNDS, to other entities and individuals, in order to avoid their fiduciary obligations.

72. In violation of the PLA, CBA and ERISA, SINGH and/or GUJRAL failed to remit all contributions for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96 and continuing throughout the pendency of this action.

73. Pursuant to 29 U.S.C. § 1109(a) and the CBA, the FUNDS are entitled to recover from SINGH and/or GUJRAL the following: (a) all delinquent contributions found due and owing from November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96,

and continuing throughout the pendency of this action; (b) interest at ten percent (10%) per annum on all delinquent contributions (as defined in the CBA); (c) audit costs; and (d) reasonable attorney's fees, costs and expenses.

74. Pursuant to Article XIV of the CBA, EMPLOYER must deduct union dues and assessments from employees' wages and was required to remit union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of FIDELIS.

75. Upon information and belief, as an officer of FIDELIS and by executing the SCA's PLA Letter of Assent, SINGH exercised dominion and control respecting the management or disposition of union dues and assessments that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

76. Upon information and belief, as an officer of FIDELIS, and by executing the DOC's PLA Letter of Assent and signing certified payroll reports, GUJRAL exercised dominion and control respecting the management or disposition of union dues and assessments that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

77. SINGH and/or GUJRAL failed to remit union dues and assessments due and owing to LOCAL 1 for employees of FIDELIS for November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92 and continuing throughout the pendency of this action.

78. Upon information and belief, SINGH and/or GUJRAL diverted dues and assessments due to LOCAL 1 to other entities and/or individuals in order to avoid their fiduciary obligations.

79. SINGH and/or GUJRAL interfered with plaintiff LOCAL 1's right to possess and control those dues and assessments under common law and Article 3-A of the New York Lien Law.

80. Pursuant to common law and Article 3-A of the New York Lien Law, LOCAL 1 is entitled to recover from SINGH and/or GUJRAL the union dues and assessments for November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92 and continuing throughout the pendency of this action.

**AS AND FOR PLAINTIFF FUNDS' FIRST CLAIM**
**FOR RELIEF AGAINST EMPLOYER**

81. Plaintiff FUNDS repeat and reallege paragraphs "1" through "80" hereof with the same force and effect as if such were fully set forth herein.

82. EMPLOYER's failure to submit contributions due and owing the FUNDS, as set forth in paragraphs "48" through "55" herein, constitutes a violation of 29 U.S.C. §§ 1132 and 1145.

83. Accordingly, pursuant to 29 U.S.C. § 1132(g)(2), the FUNDS are entitled to recover the following: (a) all unpaid contributions found due and owing for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96, and continuing throughout the pendency of this action; (b) simple interest at ten percent (10%) per annum on all unpaid contributions (as defined in the CBA); (c) the greater of interest or liquidated damages in the amount of twenty percent (20%) on all unpaid contributions; (d) audit costs; (e) reasonable attorney's fees, expenses and costs of the action; and (f) such other legal and equitable relief as the Court deems appropriate.

**AS AND FOR PLAINTIFF FUNDS' SECOND CLAIM**
**FOR RELIEF AGAINST EMPLOYER**

84. Plaintiff FUNDS repeat and reallege paragraphs "1" through "83" hereof with the same force and effect as if such were set forth here in full.

85. EMPLOYER's failure to submit contributions due and owing to the

FUNDS for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96, as set forth in paragraphs "48" through "55" herein, constitutes a violation of the CBA.

86. Accordingly, the CBA entitles the FUNDS to receive from EMPLOYER the following: a) all unpaid contributions for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96 and continuing throughout the pendency of this action; b) audit costs; and c) full damages pursuant to ERISA, including liquidated damages of twenty percent (20%), interest at ten percent (10%) per annum (as defined in the CBA), reasonable attorney's fees, expenses and costs of the action.

**AS AND FOR PLAINTIFF LOCAL 1'S FIRST CLAIM**
**FOR RELIEF AGAINST EMPLOYER**

87. Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "86" hereof with the same force and effect as if fully set forth herein.

88. EMPLOYER's failure to remit dues and assessments to LOCAL 1 for the period November 1, 206 through June 30, 2019 in an amount not less than $1,270.92, as set forth in paragraphs "48" through "55" herein, constitutes a violation of Article XIV of the CBA.

89. Accordingly, EMPLOYER is liable to LOCAL 1 for the following: (a) unremitted dues and assessments for the period November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92, and continuing throughout the pendency of this action; and (b) accrued prejudgment interest of nine percent (9%) per annum on said dues and assessments from the due date to the date of payment.

**AS AND FOR THE PLAINTIFF FUNDS' CLAIM FOR RELIEF**
**AGAINST DEFENDANTS SINGH AND/OR GUJRAL**
**AS FIDUCIARIES**

90. Plaintiff FUNDS repeat and reallege each and every allegation contained in

paragraphs “1” through “89” of this Complaint as if fully set forth herein.

91. EMPLOYER is required to make contributions to the FUNDS.

92. To the extent that SINGH and/or GUJRAL are officers of FIDELIS and signed the SCA’s and DOC’s PLA Letters of Assent, and certified payroll reports on behalf of FIDELIS, SINGH and/or GUJRAL constitute fiduciaries under ERISA, 29 U.S.C. §1002(21)(A), with respect to the FUNDS, as they exercised authority or control respecting the management or disposition of the FUNDS’ assets on behalf of FIDELIS.

93. Similarly, SINGH and/or GUJRAL are fiduciaries under New York Lien Law, Article 3-A, Section 70, to the extent that they control/controlled the proceeds received by FIDELIS for work performed in connection with an improvement of real property.

94. SINGH and/or GUJRAL’s failure to submit contributions due and owing from FIDELIS to the FUNDS, as set forth in paragraphs “48” through “55” herein, constitutes a violation of ERISA fiduciary duties, 29 U.S.C. § 1104, and the fiduciary duties imposed by New York Lien Law, Article 3-A.

95. Pursuant to ERISA, 29 U.S.C. § 1109(a), SINGH and/or GUJRAL are personally liable to make good any losses to the FUNDS resulting from each such breach and to restore any profits which would have been made through use of assets of the FUNDS.

96. Accordingly, pursuant to 29 U.S.C. §§ 1109 and 1132(g)(1), the FUNDS are entitled to recover from SINGH and/or GUJRAL personally: (a) all of FIDELIS’s unpaid contributions for the period November 1, 2016 through June 30, 2019 in an amount not less than $18,371.96, and throughout the pendency of this action; (b) accrued prejudgment interest of ten percent (10%) per annum on said unpaid contributions (as defined in the CBA); (c) audit costs; (d) reasonable attorney’s fees, expenses and the cost of the action; and (e) such other legal and

equitable relief as the Court deems appropriate.

**AS AND FOR THE PLAINTIFF LOCAL 1'S CLAIM FOR RELIEF AGAINST DEFENDANTS SINGH AND/OR GUJRAL AS FIDUCIARIES**

97. Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "96" hereof with the same force and effect as if fully set forth herein.

98. In violation of the CBA, SINGH and/or GUJRAL failed to remit dues and assessments to LOCAL 1 for members employed by FIDELIS for the period November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92, as set forth in paragraphs "48" through "55" herein.

99. Pursuant to Article XIV, Section 1(a) of the CBA, FIDELIS deducted union dues and assessments from employees' wages and was required to remit union dues and assessments on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of FIDELIS.

100. SINGH and/or GUJRAL exercised dominion and control respecting the management or disposition of union dues and assessments as officers of FIDELIS and to the extent they signed the SCA's and DOC's PLA Letters of Assent and certified payroll reports on behalf of FIDELIS.

101. SINGH and/or GUJRAL were obligated to hold dues and assessments in trust and remit them to LOCAL 1.

102. SINGH and/or GUJRAL interfered with plaintiff LOCAL 1's right to possess and control those dues and assessments.

103. Pursuant to common law, SINGH and/or GUJRAL are personally liable to

make good any losses to LOCAL 1 from any breach of their duty to remit dues and assessments due and owing LOCAL 1.

104. Accordingly, pursuant to common law, LOCAL 1 is entitled to recover from SINGH and/or GUJRAL personally: (a) all unpaid dues and assessments found due and owing for the period November 1, 2016 through June 30, 2019 in an amount not less than $1,270.92; and (b) prejudgment interest on said dues and assessments from the date the cause of action accrued.

**WHEREFORE**, Plaintiffs FUNDS and LOCAL 1 hereby request judgment as follows:

a. against EMPLOYER, for all outstanding past due contributions in an amount not less than $18,371.96 to the FUNDS for the period November 1, 2016 through June 30, 2019 and continuing throughout the pendency of this action;

b. against EMPLOYER, for payment of all outstanding dues and assessments in an amount not less than $1,270 to the FUNDS for the period November 1, 2016 through June 30, 2019 and continuing throughout the pendency of this action;

c. against EMPLOYER, for interest of ten percent (10%) on all unpaid contributions found to be due and owing under the CBA, in accordance with ERISA and the CBA;

d. against EMPLOYER, for accrued prejudgment interest on all unpaid dues and assessments found to be due and owing under the CBA;

e. against EMPLOYER, for statutory liquidated damages of twenty percent (20%) on all unpaid contributions found due and owing under the CBA, in accordance with ERISA and the CBA;

f. against EMPLOYER, for all audit costs;

g. against EMPLOYER, for reasonable attorney's fees, costs and expenses, in accordance with ERISA and the CBA;

h. against SINGH and/or GUJRAL for all outstanding past due contributions in an amount not less than $18,371.96 to the FUNDS for the period November 1, 2016 through June 30, 2019 and

continuing throughout the pendency of this action in accordance with ERISA;

i. against SINGH and/or GUJRAL for payment of all unpaid dues and assessments in an amount not less than $1,270.92 to the LOCAL 1 for the period November 1, 2016 through June 30, 2019;

j. against SINGH and/or GUJRAL for accrued prejudgment interest on all outstanding past due contributions to the FUNDS;

k. against SINGH and/or GUJRAL for accrued prejudgment interest on outstanding dues and assessments to LOCAL 1;

l. against SINGH and/or GUJRAL for audit costs, attorney's fees, costs and expenses from this action, in accordance with ERISA; and

m. for such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 18, 2020

Respectfully submitted,

HOLM & O'HARA LLP
*Attorneys for Plaintiffs*

By: /s/ Carol G. Dell
Carol G. Dell (CG 7895)
3 West 35th Street, 9th Floor
New York, New York 10001
(212) 682-2280
c.dell@hohlaw.com

*Index No.* **CV-3778** *Year* **2020**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**JACK ARGILA, in his fiduciary capacity as a Trustee for the POINTERS, CLEANERS & CAULKERS WELFARE, PENSION & ANNUITY FUNDS, the BRICKLAYERS JOINT APPRENTICE TRAINING FUND, the LABOR MANAGEMENT FUND, and the PROMOTION FUND; and as President of the BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NO. 1, B.A.C.I.U., AFL-CIO; and the TRUSTEES of the BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND and the INTERNATIONAL MASONRY INSTITUTE,**

**Plaintiffs,**

**- against –**

**FIDELIS CONTRACTING, INC., LAKHVINDER SINGH, and TEJINDER GUJRAL,**

**Defendant.**

## COMPLAINT

---

**HOLM & O'HARA LLP**

*Attorneys for:* **Plaintiff(s)**

**3 West 35th Street, 9th Floor**
**New York, NY 10001**

---